IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | CR 106-127 |
| ) | |
| REGINALD DEMARCO BARNES ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

In the above-captioned criminal case, the government has accused Defendant of 1) conspiracy to distribute, and possession with intent to distribute, over fifty (50) grams of cocaine base in violation of 21 U.S.C. § 846; 2) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); 3) possession of firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A); 4) possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1); 5) possession of stolen firearms in violation of 18 U.S.C. § 922(j); and 6) possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). The matter is now before the Court on Defendant's motions to suppress all evidence seized during the execution of a search warrant[1] on January 11, 2006, at 1603 12th Street, Augusta, Georgia, ("1603 12th Street" or

---

[1] Defendant initially argued that the search warrant was invalid because it was dated January 9, 2005, over a year before the January 11, 2006, date that the warrant was executed. The government alleged that the 2005 date was merely a typographical error and that the warrant was actually issued on January 9, 2006. At the hearing Defendant conceded that the 2005 date was merely a typographical error and withdrew his argument regarding the warrant's validity. Therefore, this issue need not be considered further, and the Court will

"the target residence") and all evidence arising from a stop and search of Defendant's vehicle on the same date. (Doc. nos. 12, 16, 18). The government opposes Defendant's motions. (Doc. nos. 15, 19). The Court held an evidentiary hearing on December 4, 2006, at which time the Court heard testimony from Sergeant Mathue Phares ("Sergeant Phares"), Richmond County Sheriff's Department, Narcotics Division; Investigator William Jarrett ("Investigator Jarrett"), Richmond County Sheriff's Department; and Melinda Parrish ("Ms. Parrish"), the passenger in Defendant's vehicle at the time of the stop. For the reasons developed more fully herein, the Court **REPORTS** and **RECOMMENDS** that the motions to suppress be **DENIED**.

## I. FACTS

### A. The Testimony of Sergeant Phares

Sergeant Phares testified that on January 11, 2006, he was assisting in the execution of a search warrant at 1603 12th Street by acting as the "eyeball," providing surveillance of the target residence. This surveillance was conducted during daylight hours, around mid-afternoon. Sergeant Phares observed Defendant, with whom he was familiar from prior occasions, arrive at the residence driving a green Dodge Magnum, accompanied by a female passenger. Defendant parked in the rear of the residence and exited the vehicle. As Defendant approached the back door of the residence, he paused for a moment as if he were retrieving and utilizing a key to unlock the barred door. He then opened the barred outer door and a similar pause occurred before Defendant opened the interior door. Defendant then entered the residence. He left the barred door open but closed the interior door behind

---

focus its analysis on the stop and search of Defendant's vehicle.

him. Defendant stayed inside the residence for a short time and then exited the residence, appearing to relock the doors. He then returned to the Dodge Magnum and departed.

Sergeant Phares testified that he followed Defendant for a short distance and observed him turn into a gas station. At this point he relayed the sequence of events he had just observed regarding Defendant's arrival at the residence, and a description of the vehicle Defendant was driving, to Investigator Jarrett before returning to the residence to continue his surveillance.

Sergeant Phares stated that he had no involvement in the execution of the warrant later that afternoon, other than providing surveillance. Sergeant Phares testified that it is standard procedure to perform an investigatory stop of a person who arrives at a residence for which a warrant has been issued after this person departs. He stated that, as a prudent police practice, a person would never be stopped in front of a target residence because such a stop could alert the occupants to the presence of law enforcement and lead to the destruction of evidence.

## B. The Testimony of Investigator Jarrett

Investigator Jarrett testified that on January 9, 2006, he applied for and received a warrant to search a residence located at 1603 12th Street and the person of Darryl Scott. Investigator Jarrett's affidavit in support of the search warrant stated that a confidential informant, who has proven reliable in the past, informed him that the residence was a drug "stash house" which was being utilized by Defendant and Mr. Scott. The informant revealed to Investigator Jarrett that Mr. Scott had conducted cocaine sales from the residence within two days prior to the date of the warrant application.

3

Investigator Jarrett testified that on January 11, 2006, Sergeant Phares was conducting surveillance at the target residence in preparation for executing the warrant. Sergeant Phares radioed Investigator Jarrett and informed him that he had just observed Defendant unlock the doors of the residence with a key, enter the residence for a short period, then leave the residence traveling on 12th Street toward Martin Luther King Boulevard in a green Dodge Magnum with a female passenger. Investigator Jarrett traveled in the direction of Defendant's described location and observed Defendant's vehicle pulling out of a gas station. Investigator Jarrett, driving in an unmarked silver Dodge Intrepid equipped with blue lights, pulled Defendant over on Swanee Quintet Boulevard. Investigator Vincent arrived on the scene shortly thereafter to provide support for the stop.

Investigator Jarrett asked to see Defendant's license, which he produced, and also questioned him regarding ownership of the vehicle, which was a rental car. Investigator Jarrett informed Defendant that a canine unit was being called to perform a free air sniff of the vehicle. Defendant did not object. The canine unit arrived approximately fifteen (15) minutes later. Defendant and Ms. Parrish were asked to exit the vehicle. The canine conducted a free air sniff and "hit" on the vehicle beside one of the doors. This particular canine's trained method of indicating a hit was by sitting down when drugs were detected. The hit by the canine suggested to the officers that their suspicions regarding Defendant's use of the target residence as a drug stash house were likely correct and that it was likely that narcotics were either inside, or had recently been inside, the vehicle. At this time the officers began searching the vehicle, located and recovered $1,609 from the pocket of a brown jacket, but found no narcotics.

4

By this point, a crowd had gathered in the area surrounding the officers. Onlookers were shouting to the officers, Defendant, and Ms. Parrish. Thus, the officers, Defendant, and Ms. Parrish relocated a short distance away to the area under the 15th Street Bridge intersection with Wrightsboro Road. Investigator Jarrett stated that during this time period, Defendant was not handcuffed or under arrest. He questioned Defendant regarding the target residence and asked him if the keys, which he was holding in his hand, fit the door at that residence. Defendant stated that the keys did not fit the locks at 1603 12th Street but that Investigator Jarrett was welcome to check.

At this point, Defendant and Investigator Jarrett traveled back to the 1603 12th Street residence with Defendant riding as a passenger in the front seat of Investigator Jarrett's vehicle. Another officer drove the Dodge Magnum to the residence, accompanied by Ms. Parrish. When they arrived at 1603 12th Street, the officers utilized keys on the key chain, which was in Defendant's possession, to open the locks at the residence. Following the execution of the warrant at 1603 12th Street, firearms, electronic devices, digital scales, and a shoe, which appeared to contain cocaine, were confiscated from the residence. The keys which were on Defendant's person, as well as the $1,609 which was found in the pocket of the brown jacket in the vehicle, were also seized. Defendant was not placed under arrest until the officers arrived back at the residence and the contraband was found.

## C. The Testimony of Ms. Parrish

Ms. Parrish testified that Defendant is her fiancée. She stated that Defendant picked her up on January 11, 2006, in a Dodge Magnum after her shift at Food Lion ended at around 1:00 p.m. They then went to pick up her car, a 2001 Cadillac DeVille, from her cousin's

house. She drove the car to Johnson Motors, a repair shop. Defendant followed Ms. Parrish to Johnson Motors and picked her up after she dropped off her car. Ms. Parrish stated that they stopped by the house where Defendant's aunt lives, and after they left this residence, they were pulled over by Investigator Jarrett on Swanee Quintet Boulevard.

Ms. Parrish stated that after Defendant was briefly questioned by Investigator Jarrett, they waited for the canine unit for approximately twenty (20) to thirty (30) minutes. The canine walked around the car, and then they were asked to step out of the car. Ms. Parrish stated that she did not see the canine alert to the car but was told by the officers that this was the case. She stated that at this point, Defendant was placed in handcuffs. She further stated that her red jacket was taken out of the car and that her rent money, approximately $1,250, was taken out of the jacket pocket.

Ms. Parrish testified that they left the area and relocated to an area under the 15th Street Bridge, where the car was searched more extensively. She stated that a set of keys were seized from a cup holder in the car. She stated that these keys were hers; however, a few of the keys on the key chain belonged to her nephew, Willie Bass, but somehow ended up on her key chain.

At this point, they left the area under the 15th Street Bridge and traveled to the residence at 1603 12th Street. Ms. Parrish rode in the Dodge Magnum, which was driven by an officer of Asian ethnicity, and Defendant traveled with Investigator Jarrett. When they arrived at the residence, Ms. Parrish stated that officers were bringing guns out from inside of the residence. Ms. Parrish stated that the officers told them that if the keys fit the locks, they would be arrested, and if the keys did not fit, they would be arrested anyway. She stated

6

that an officer said the keys did not fit the locks. The two were held for about an hour, until some drugs were allegedly recovered in the residence, and Defendant was placed under arrest. Ms. Parrish was not arrested and was subsequently released.

On cross-examination, Ms. Parrish stated that her 2001 Cadillac DeVille was purchased by her mother in October 2006. However, this date was inconsistent with Ms. Parrish's prior testimony that she drove the car to the shop on January 11, 2006. When questioned further, Ms. Parrish stated that she was not sure when the car was purchased. Ms. Parrish then stated that the car was registered in her mother's name, Linda Jones. However, Ms. Parrish recanted, when pressed, and stated that the car was actually given to her by Defendant, and it was registered in his name. With regard to the work on the car at the repair shop, Ms. Parrish stated that although the car was actually brought into the shop on January 11, 2006, the paperwork for these repairs was filled out with a January 12, 2006 date.

## II. DISCUSSION

### A. The Testimony of Ms. Parrish Suffers from Credibility Problems

Credibility determinations in suppression hearings belong to the hearing judge, and are entitled to deference unless they reflect an "unbelievable" understanding of the facts. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing that credibility determinations are within the province of the factfinder). In making a credibility determination, the Court must consider "the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand." Ramirez-Chilel, 289 F.3d at 750. In this instance, as Defendant's fiancée, Ms. Parrish's interests are obvious. The Court also notes

that Ms. Parrish spoke in a soft, hushed voice, and her answers to certain questions were almost inaudible. This lack of a confident tone was especially pronounced when Ms. Parrish provided answers which were false. In fact, she recanted several of her answers when pressed.

To begin, Ms. Parrish stated that the 2001 Cadillac DeVille which she presently drives was purchased by her mother, Linda Jones, in October of 2006. However, after being reminded of her prior testimony that she drove the car to the shop on January 11, 2006, Ms. Parrish stated that the car was actually given to her by Defendant, and it was registered in his name. This answer, in addition to exposing a falsity, reveals that, not only is Ms. Parrish Defendant's fiancée, but Defendant also acted as her benefactor by providing her with transportation and, likely, other forms of support. Ms. Parrish would obviously have a personal interest in protecting a source of financial support, and this is a further reason to discredit her testimony.

Also, Ms. Parrish stated that the officers seized $1,250 from her red jacket after conducting a search of the Dodge Magnum. She further stated that she never observed the officers seize money from any other jacket in the vehicle. The warrant return indicates that $1,609 was confiscated during the search. Thus, if Ms. Parrish's testimony is believed, it would mean that the officers added $359 to the $1,250 seized from Ms. Parrish's jacket. (Doc. no. 16, p. 3). This would certainly be an unlikely chain of events.

As noted, Ms. Parrish's interests are obvious, her demeanor was suspect, and her testimony is riddled with inconsistencies and blatantly false statements. Thus, to say the least, the Court gives her testimony very little weight. Conversely, the testimony from the

8

government witnesses does not appear inconsistent, except possibly for a few minor details, and will be assumed accurate for the purposes of the Court's recommendation.

### B. The Respective Burdens of the Parties

As a general matter, a defendant contending that a search violated his Fourth Amendment rights must demonstrate that the search was illegal and that he had a legitimate expectation of privacy in the property searched. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). Nevertheless, "[u]pon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983), *cert. denied*, 465 U.S. 1023 (1984); see also United States v. Waldrop, 404 F.3d 365, 368 (5th Cir. 2005)("A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." (citation omitted)). Thus, "[t]he [g]overnment must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment [sic]." Freire, 701 F.2d at 1519; see also United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977). Accordingly, although Defendant must demonstrate that the warrantless search of the Dodge Magnum implicated his Fourth Amendment rights, once he has done so, the burden shifts to the government to show that an exception to the warrant requirement applies.[2]

---

[2] Defendant clearly had a reasonable expectation of privacy in the rental car which implicated his Fourth Amendment rights, United States v. Cooper, 133 F.3d , 1394, 1399-1400 (11th Cir. 1998), and the government does not present an argument to the contrary.

## C. The Stop of the Vehicle

Defendant alleges that he committed no traffic violation whatsoever and that there was no justification for Investigator Jarrett to stop his vehicle. (Doc. no. 18, p. 1). The government contends that the stop was justified based upon a reasonable suspicion sufficient to support an investigative stop. (Doc. no. 19, p. 3). The government has the better argument.

The reasonableness of an investigative stop turns on two inquiries: 1) whether the stop was reasonable at its inception, and 2) whether the stop became unreasonable in its scope or duration. See United States v. Acosta, 363 F.3d 1141, 1144-45 (11th Cir. 2004); see also United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Under Terry v. Ohio, 392 U.S. 1, 30 (1968), the police may briefly stop and detain persons in order to investigate a reasonable suspicion that those persons are involved in criminal activity, even in the absence of probable cause to believe that a crime has been committed. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop. Terry, 392 U.S. at 21; see also United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999). Although the "reasonable suspicion" required for a Terry stop is less stringent than the requirement for probable cause, United States v. Mikell, 102 F.3d 470, 475 (11th Cir. 1996), "reasonable suspicion" requires that an officer have more than a "hunch" that criminal conduct is afoot based on unparticularized facts. The officer must be able to articulate some minimal,

objective justification for the investigatory detention. Acosta, 363 F.3d at 1145; United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).

A reasonable, articulable suspicion to justify a stop can be based on the "collective" knowledge of all the officers involved in the stop. Acosta, 363 F.3d at 1145. Here, Investigator Jarrett had obtained a warrant for the 1603 12th Street residence. The affidavit accompanying the warrant set forth his belief that Defendant was utilizing the residence as a "stash house" for drugs based upon information that he had obtained from a reliable informant. Sergeant Phares, who was surveiling the residence in preparation of execution of the warrant, observed Defendant enter the residence through what appeared to be the use of a key, remain inside the residence for only a short period of time, and then depart. Sergeant Phares then relayed this information to Investigator Jarrett.

At this point Investigator Jarrett clearly had a reasonable and articulable suspicion that Defendant was engaging in drug activity, entitling him to stop Defendant's car and investigate further. See United States v. Powell, 222 F.3d 913, 915-18 (11th Cir. 2000) (observing known narcotics trafficker enter suspect's car and take a short drive provided reasonable suspicion for stop when based upon testimony that this was indicative of drug activity). Defendant was stopped, his vehicle information was checked, and Investigator Jarrett summoned a canine unit to follow up on his suspicions that narcotics could be present in the vehicle. The approximately fifteen (15) minutes of detention while awaiting the canine unit did not make the stop unreasonable in scope or duration. United States v. Gil, 204 F.3d 1347, 1351 (11th Cir. 2000) (approximately seventy-five (75) minutes of detention in handcuffs was not unreasonable); United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988)

11

(stop of approximately fifty (50) minutes awaiting the arrival of a canine unit was not unreasonable).

### D. The Search of the Vehicle

Defendant states that there was no justification for the search of Defendant's vehicle, as the officers did not have a warrant to search the vehicle, nor was there probable cause to believe that the vehicle contained narcotics. At the hearing, the government argued that probable cause to search the vehicle existed because a trained canine alerted to the vehicle. The Court finds the government's contention persuasive.

In general, the police may search an automobile without a warrant under three (3) circumstances: 1) incident to the lawful arrest of an occupant of the vehicle, see Thornton v. United States, 541 U.S. 615, 617 (2004),[3] 2) based upon probable cause if the vehicle is readily mobile, see Pennsylvania v. Labron, 518 U.S. 938, 940-41 (1996)(*per curiam*), or 3) with valid consent, see Ohio v. Robinette, 519 U.S. 33, 39-40 (1996). In this instance, there was no warrant to search the Dodge Magnum, nor does the record reflect that Defendant or Ms. Parrish ever gave the officers consent to search the vehicle.[4] However, a trained canine's alert on a vehicle, during a lawful stop which has not been unconstitutionally prolonged, constitutes probable cause to search a car for contraband. See Illinois v. Caballes, 543 U.S.

---

[3]Of course, it should also be noted that once officers have conducted a lawful arrest of the occupant-owner of the vehicle, they may also lawfully impound the car and conduct an inventory search. See Arkansas v. Sullivan, 532 U.S. 769, 770 (2001)(*per curiam*); Colorado v. Bertine, 479 U.S. 367, 368-69 (1987)(upholding inventory search of van after driver's arrest for drunk driving).

[4]The government's response to Defendant's motion to suppress asserted that Defendant consented to a search of the vehicle. (Doc. no. 19, pp. 3, 4). No evidence that Defendant consented to a vehicle search was presented at the hearing.

12

405, 406-09 (2005). In this instance, a trained canine was brought to the scene, conducted a free air sniff, and hit on the vehicle beside one of the doors. Therefore, at this point, the officers had probable cause to search the vehicle. Indeed, the hit confirmed to the officers that drug activity was likely occurring and that narcotics were either inside, or had recently been inside, the vehicle. Once probable cause was established, there is no question that the ensuing search of the vehicle was justified.[5]

Moreover, relocating the search a short distance away after the crowd developed was reasonable given the safety concerns the crowd posed. Moving the search and investigation did not make the search unreasonable. United States v. Kapperman, 764 F.2d 786, 792 (11th Cir. 1985) (justified stop and consent search not rendered unreasonable when the investigation was moved 250 yards away to a nearby parking lot).

As to the claim that Defendant made certain oral statements to Investigator Jarrett that Defendant believes will be introduced against him at trial, the Court initially notes that the motion is not clear whether Defendant is asserting that the questioning during the traffic stop on Swanee Quintet Boulevard and under the 15th Street Bridge amounted to a *de facto* arrest, or whether there were statements made at some other point in time prior to his official arrest at the target residence that should be suppressed. (See doc. no. 18, p. 2). Defendant neither submitted an affidavit or testimony, nor identified any specific evidence in support of his claims, as is required by Loc. Crim. R. 12.1. Furthermore, a simple roadside stop by an officer does not amount to "custodial interrogation" which would trigger the requirements of giving warnings under Miranda v. Arizona, 384 U.S. 436 (1966). Berkemer v. McCarty,

---

[5]There is no dispute that the vehicle was readily mobile.

468 U.S. 420, 442 (1984). Thus, in the absence of any explanation or evidentiary offerings on this point, the Court finds no basis to suppress any statements made by Defendant.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED.**

SO REPORTED and RECOMMENDED this 3rd day of January, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

UNITED STATES OF AMERICA    *

vs.    *    CASE NO. CR106-127

REGINALD DEMARCO BARNES    *

   *

   *

The undersigned, a regularly appointed and qualified deputy in the office of this Clerk of this District, while conducting the business of the Court for said Division does hereby certify the following:

1. Pursuant to instructions from the court, and in the performance of my official duties, I personally placed in the U.S. Mail a sealed envelope bearing the lawful frank of the Court, and properly addressed to each of the persons, parties or attorneys listed below; and

2. That the aforementioned envelope(s) contain a copy of the documents known as Rpt & Recomm dated 1/3/07, which is part of the official records of this case.

Date of Mailing: 1/3/07
Date of Certificate: 1/3/07

SCOTT L. POFF, CLERK

By L. Jelinden

NAME:
1. Reginald Demarco Barnes
2. Richard E. Allen
3. 
4. 
5. 
6. 
7. 

Cert/Copy
- ☐ ☐ District Judge
- ☐ ☒ Magistrate Judge
- ☐ ☐ Minutes
- ☐ ☐ U.S. Probation
- ☐ ☐ U.S. Marshal
- ☐ ☒ U.S. Attorney
- ☐ ☐ JAG Office

Cert/Copy
- ☐ ☐ Dept. of Justice
- ☐ ☐ Dept. of Public Safety
- ☐ ☐ Voter Registrar
- ☐ ☐ U.S. Court of Appeals
- ☐ ☐ Nicole/Debbie
- ☐ ☐ Ray Stalvey
- ☐ ☐ Cindy Reynolds